# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHATASIA C. BUCKNER, | : | CIVIL NO. 3:24-CV-00659 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA, *et al.*, | : | |
| Defendants. | : | |

## **REPORT AND RECOMMENDATION**

## I. Introduction.

Plaintiff Shatasia C. Buckner ("Buckner") claims that some of the defendants removed her children from her custody and other defendants wrongfully arrested her while enforcing custody orders. After reviewing her initial complaint, we concluded that it failed to state a claim upon which relief could be granted, and granted Buckner an opportunity to amend her complaint. Buckner did so—twice. After reviewing her second amended complaint, we conclude it also fails to state a claim upon which relief can be granted. Accordingly, we recommend that the Court dismiss Buckner's second amended complaint and close the case.

## II. Background.

Buckner commenced this action pro se by filing a form complaint and a request to proceed *in forma pauperis* on March 12, 2024. *Docs. 1, 2*. Buckner initiated this

case in the United States District Court for the Southern District of New York ("Southern District of New York"). *See id.* On April 8, 2024, the Southern District of New York found that it was the wrong venue for this case and transferred it to our court. *Doc. 3.* We then ordered Buckner to file a proper application to proceed *in forma pauperis* in our court or to tender payment. *Doc. 5.* When Buckner failed to file such application, we ordered Buckner to show cause why this action should not be dismissed. *Doc. 6.* Buckner did not do so, but she filed a proper application for leave to proceed *in forma pauperis*, which we granted. *Docs. 7, 8.*

We reviewed Buckner's complaint and found that it failed to state a claim upon which relief could be granted. *Doc. 9.* We granted Buckner leave to file an amended complaint. *Id.* On August 20, 2024, Buckner filed her first amended complaint. *Doc. 10.* And on September 4, 2024, Buckner filed her second amended complaint. *Doc. 11.* We deemed the second amended complaint properly filed such that we consider the second amended complaint to be the operative complaint. *Doc. 12.* Accordingly, the following facts are taken from the second amended complaint.[1]

Buckner has children with Russell King ("King"). *See doc. 11* at 3. According to Buckner, King is the non-custodial parent. *Id.* Regardless, on February 6, 2023,

---

[1] In addition to the form complaint, the second amended complaint also includes a number of attachments including New York and Pennsylvania court documents, snippets of online news articles and emails, screenshots of text messages and internet searches, medical records relating to Buckner and her children, financial documents, and paperwork from the New York Housing Authority. *See docs. 11-1–11-6.*

King and Chanel Buckner ("Chanel") "removed [Buckner's] children[,]" "actively withholding [her] children in Pennsylvania[.]" *Id.* Buckner explains that Chanel and King acted with "intent to obstruct [Buckner's] custodial rights." *Id.* Chanel achieved this end by "obtain[ing] a fraudulent custody order." *Id.* According to Buckner, the Luzerne County Family Court "failed to dismiss orders filed by Chanel . . . on grounds of lack of service." *Id.*

While enforcing these orders, the Ashley Borough Police Department "wrongfully arrested" Buckner. *Id.* Buckner adds, "I was subjected to physical and verbal assault on 10/28/23 resulting from the kidnapping." *Id.* But she does not explain who assault her, how the assault resulted from the kidnapping, or what the assault entailed. *See id.*

As for relief, Buckner requests we "vacate orders and dismissal of case by Defendant Chanel Buckner on 4/13/23 in special relief order ushered in by Luzerne County Family Court[.]" *Id.* at 4. She also seeks $18,200,000 in "punitive, psychological and general damages[.]" *Id.*

Buckner names five defendants: (1) the Commonwealth of Pennsylvania ("Commonwealth"); (2) "the City of Luzerne County"; (3) the Ashley Borough Police Department ("Police Department"); (4) Chanel; and (5) King. Buckner does not clearly state the legal basis for her claims. *See generally id.* But Buckner does list the following in the section of the form complaint designated for "Relief": "contempt of Chanel . . . , and Defendant Ashley PD inflicting permanent damage, emotional

distress, trauma, psychological abuse, financial loss, loss in quality of life, gross negligence,[ ]false arrest reckless discretion, harassment,[ ]retaliation operational neglect recklessly failing to verify validity of any orders, reckless discretion and disregard, parental,[ ]civil,[ ]human,[ ]constitutional rights[.]" *Id.* (commas in original).  After liberally construing the second amended complaint, we conclude that Buckner is bringing claims for false arrest and excessive force pursuant to 42 U.S.C. § 1983.

## III.  Standard of Review.

Under 28 U.S.C. § 1915(e)(2), the court shall dismiss a complaint brought *in forma pauperis* if it determines that the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  This statutory text mirrors the language of Fed. R. Civ. P. 12(b)(6), which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F. 3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a

. . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**IV. Discussion.**

The second amended complaint is confusing. Even after construing it liberally, it is unclear exactly what Buckner alleges each defendant did or failed to do. It thus appears that Buckner has failed to provide the defendants with fair notice of the grounds upon which her claims against them rest. *Cf.* Fed. R. Civ. P. 8. Moreover, Buckner brings her claims pursuant to § 1983, but the defendants are not proper defendants against whom § 1983 claims can be brought.

**A. The Commonwealth.**

The Eleventh Amendment provides immunity to the Commonwealth. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is that each state is a sovereign entity in our federal system and it is

inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*

There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency. First, a state may waive its Eleventh Amendment immunity by consenting to suit. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999). Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269–70 (3d Cir. 2020).

Neither of these circumstances are present here. The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania has not waived its sovereign immunity defense in federal court."). And Buckner has not cited to any statute that waives the Commonwealth's Eleventh Amendment immunity in the circumstances of this case. *See Quern v. Jordan*, 440 U.S. 332 (1979). We thus conclude that the Commonwealth is entitled to Eleventh Amendment immunity from Buckner's § 1983 claims against it.

### B. The Police Department and the "City of Luzerne County."

Buckner's § 1983 claims against the Ashley Borough Police Department fail to state a claim as well. Courts have concluded that—although local governments are subject to suit under § 1983—a police department, as a sub-unit of the local government, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993); *see also Monell v. Department of Social Services*, 436 U.S. 658 (1978). Thus, they have held that while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.* The proper defendant, then is the Ashley Borough municipality.

"[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.* Another way for a plaintiff to present a claim against a municipality is to allege that her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

Buckner has made no allegation that a custom or policy of Ashley Borough led to her false arrest or any of the other actions allegedly taken by the Police Department. Accordingly, even if we were to substitute the municipality as the proper defendant, Buckner fails to state a claim against the municipality as well. We

9

thus conclude that Buckner has failed to state a claim against the Ashley Borough Police Department, and we will not substitute the municipality.

As to the defendant the "City of Luzerne County," it is entirely unclear whether Buckner means to bring claims against Luzerne Borough or Luzerne County. *See doc. 11*. Buckner is also unclear what she alleges the "City of Luzerne County" did. *Id.* Regardless, it is clear that she does not allege a custom or policy of this municipal defendant. Accordingly, we also conclude that Buckner has failed to state a claim against either Luzerne County or Luzerne Borough.

### C.  Chanel and King.

The second amended complaint also fails to state a claim upon which relief can be granted against Chanel and King because Buckner has not alleged facts to show that they were acting under color of state law. "Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir.1998)). The Supreme Court has established several approaches to the question of when a private person acts under color of state law. *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002). And the United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to

10

determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'whether the private party has acted with the help of or in concert with state officials'; and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). "The inquiry is fact-specific," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)).

"[T]he relevant question is not whether the private actor and the state have a close relationship generally, but whether there is 'such a close nexus between the State and *the challenged action* that seemingly private behavior may be fairly treated as that of the State itself.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (emphasis in original) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). "In other words, the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "Action taken by private entities with the mere approval or

11

acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

An otherwise private actor also may act under color of state law when engaged in a conspiracy with a state official including a state judge. *Dennis v. Sparks*, 449 U.S. 24, 29 (1980) ("Private parties who corruptly conspire with a judge in connection with such conduct are thus acting under color of state law within the meaning of § 1983 . . . ."). "The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). "To demonstrate the existence of a conspiracy under § 1983 [or *Bivens*], 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)). "It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Perez v. Gamez*, 1:13-CV-1552, 2013 WL 6073877, at *9 (M.D. Pa. Nov. 18, 2013). Rather, the plaintiff must show that the defendants acted in concert with the specific intent to violate the plaintiff's rights. *Davis v. Fox*, 3:12-CV-1660, 2013 WL 5656125, at * 5 (M.D. Pa. Oct. 15, 2013).

Here, Buckner does not allege facts that raise a reasonable inference that King or Chanel acted under color of state law. Nor does she allege facts from which the Court could reasonably infer a conspiracy between Chanel and King and any state actors. And "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28. We thus conclude that Buckner cannot show that Chanel or King were acting under color of state. As such, she fails to state a claim upon which relief can be granted.

### D. Supplemental Jurisdiction.

Again, we must note that Buckner's second amended complaint is confusing. Accordingly, we are not entirely clear whether she intends to bring state law claims in addition to the above-addressed federal claims. Insofar as Buckner does bring state law claims, however, such claims would fall within the Court's supplemental jurisdiction.[2] Whether to exercise supplemental jurisdiction is within the discretion of the court. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to

---

[2] It is also unclear from the complaint whether Buckner intends to invoke diversity jurisdiction in addition to the federal-question jurisdiction we exercise over the § 1983 claims. *See doc. 11*. Regardless of her intent, Buckner does not allege facts from which it can reasonably be inferred that there is complete diversity of citizenship—namely, she fails to allege the citizenship of any of the defendants. *See doc. 11*. We thus conclude that we do not have diversity jurisdiction over Buckner's state law claims, and we will have jurisdiction over those claims only if we have supplemental jurisdiction over them.

exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Buckner's state law claims, if she intends to bring any. Accordingly, we recommend that the Court decline to exercise supplemental jurisdiction over any state-law claims.

## V. Leave to Amend.

Before dismissing a complaint under a screening provision, the Court must grant the plaintiff leave to amend her complaint unless amendment would be

14

inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id*. (quoting *In re Merck & Co. Sec., Derivative, & ERISA Litig.,* 493 F.3d 393, 400 (3d Cir. 2007)). Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *Id*. "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'" *Id*. (quoting *Winer Family Trust v. Queen,* 503 F.3d 319, 330–31 (3d Cir. 2007)).

Here, we conclude that it would be futile for Buckner to file a third amended complaint. In fact, we previously concluded it would be futile for Buckner to file an amended complaint as to the Commonwealth due to its entitlement to Eleventh Amendment immunity, and we did not grant Buckner leave to file an amended complaint against it. Moreover, on her third attempt Buckner has again failed to state a claim against any of the defendants. We thus conclude it would be futile to grant Buckner further leave to amend.

## VI. Recommendation.

Based on the foregoing, we recommend that the Court dismiss Buckner's second amended complaint without granting her leave to amend.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of September 2024.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge
